First case today is N. Ray Rodney S., 4090118, for the appellant, Jacqueline Bullard, for the appellate, Luke McNeil. Please proceed. May it please the Court, counsel. My intention today is to begin with the guardian ad litem best interest counsel argument and then proceed to the issue of whether a forcible felony, whether aggravated battery that doesn't result in grave bodily harm is a forcible felony. I couldn't hear what you said. You think it would be better to do what? I plan on proceeding with arguing about the counsel issue first, best interest versus guardian ad litem versus defense counsel, and then proceed to the forcible felony issue. If this Court prefers to talk about either of those issues out of order, I'm happy to do that. Anyone prosecuted for a crime in facing a potential loss of liberty in Illinois is entitled to a defense attorney, even a 10-year-old boy. The most straightforward path to the right to counsel for delinquent minors in Illinois is the Juvenile Court Act, which, when the Act was adultified in 1998 and 1999, added a section that was never before in the Act regarding the right to counsel. Prior to the point where the Act was more adultified and the focus of the Act shifted to more punishment and accountability, the right to counsel was just a general right to counsel that, although the proceedings under the Act are not intended to be adversary in character, the minor has the right to be represented by counsel. When the Act was adultified in 1998 and 1999, a new provision was added to the statute. That provision provides that in all procedures under this article, minors shall have all the procedural rights of adults in criminal proceedings unless specifically precluded by law that enhance the protection of such minors. And then it goes on to preclude the right to a jury trial. The right to a defense attorney is a procedural right that adults have been entitled to forever. There are fundamental differences between the role of guardian ad litem and the role of defense counsel that preclude a single attorney from acting in both of those roles. The three primary differences are the loyalties to whom the guardian ad litem and the defense attorney owe their loyalties. A defense attorney is obligated to follow, to defend his client zealously, to be a zealous advocate and the duty is only to the client. In contrast, a guardian ad litem is an agent of the court and it's charged with protecting societal interests as well. In the case of defense... When was the, what were the statutes, the date of the statutes you say claimed, or you claim made the difference in the Juvenile Court Act? The Public Act was amended in 1998 and then it was, the effective date was 1999. If we were to agree with your argument then would we have to reverse the decision and disregard it in In Re J D in 2004? Your Honor, In Re J D does not require reversal because In Re J D was an abuse and neglect case. The interests in abuse and neglect cases are very different than the interests in delinquency proceedings. In delinquency proceedings, in abuse and neglect proceedings, the sole focus of the proceedings is on the best interest of the child. In contrast, in a delinquency proceeding, because a minor faces a loss of liberty and a whole host of consequences that don't have anything to do with the minor's best interest based on an adjudication of delinquency, there are different interests at work. And so In Re J D is not inconsistent with our position that minors are entitled to defense attorneys at all. How did the inconsistencies between serving as guardian ad litem and defense attorney manifest itself in this case? In this particular case, defense counsel introduced himself as, I misspoke, not defense counsel, Mr. Berggrave introduced himself as a guardian ad litem twice before trial. The trial court did not correct that in any way and say, Mr. Berggrave, you're acting as defense counsel. At the end of the proceedings, it becomes very clear that Mr. Berggrave is operating as a guardian ad litem because his client wants to go home and stay with his mother and receive community-based services. There were arguments that were available to counsel in support of that argument. Whether the trial court ultimately would have found that position in the best interest of the minor is one matter. The defense counsel had arguments at his disposal that he could have argued in favor of his client's position. But instead, he told the trial court, I cannot in good conscience argue that custody should not be removed from the minor's mother. So we know that, so he introduces himself. So this is after the trial? Yes, he introduces himself as GAL. He's explicit at the end. Was there anything during the trial where there was some manifest difference between, where the disclaimed difference manifested itself? In the case of the trial, what the trial court, what counsel did at trial, he did not expressly advocate for conviction. He did not go that far. But what he did do is he soft-pedaled the defense. The state called the complaining witness, and only the complaining witness in the case, to testify about what happened on the special education bus. What do you mean he soft-pedaled it? What should he have done? What he should not have done is what he did on cross-examination. The only thing he elicited on cross-examination was evidence that bolstered the state's case. Okay, well, Ms. Bullard, let's put you there, your counsel for the juvenile at trial. And the person on the bus has just now testified as to how your client has struck him on multiple occasions during the course of this bus ride. What's your cross-examination going to be? I can't answer that question because I wasn't defense counsel, and I didn't engage in the case. Well, you are attacking defense counsel's performance, and I want to hear what a competent defense counsel would have done. If defense counsel had not introduced himself as a guardian ad litem, and if he had not behaved that way in other portions, you're absolutely correct. I could not attack counsel's performance. So had he not introduced himself as a guardian ad litem, you wouldn't be here making this argument? Introduced himself as guardian ad litem, and clearly behaved as guardian ad litem by advocating against his client's interests at sentencing. To go back to my question at trial, I guess then you have no suggested improvement upon what he did during the course of the trial? I wouldn't have elicited damaging information for my client. Well, talk about the damaging information he elicited. What he did is he elicited testimony that Rodney's behavior was not provoked in any way by the bus monitor's actions. Another thing that, again, because we can't get into defense counsel's head, but we have to assume that he's acting as guardian ad litem, because he says he's acting as a guardian ad litem. Maybe he doesn't think there's a difference, kind of like what the courts of Illinois have thought up until this point. So he thinks he's doing a competent job as defense attorney. Couldn't a defense counsel's questioning be looked upon as a measure of testing the recollection of the witness and his ability to recall precisely what happened, when, and where? Isn't that what defense counsels are supposed to do? They are, and if that's what he wanted to do, then... Isn't that what the records show he did? His cross-examination was limited to eliciting damaging testimony. And then on his direct examination... You mean by challenging the witness's recall and giving the witness an opportunity to demonstrate how well he recalls it, defense counsel limited damaging testimony? Assuming that counsel talked to his client beforehand, he would have gotten his client's version of events. Well, then tell me again, counsel, how... Give me your cross-examination. Here's the witness who claims your client has struck him on multiple occasions on this bus. If it's an inappropriate line of cross-examination to test the witness's recall precisely what happened, when, and where, then tell me what is an appropriate line of cross-examination. At that point, if the only information that I could elicit is the fact that the incident was unprovoked and that the minor went completely out of control and nothing provoked it, then I wouldn't ask any questions at all. So asking no cross-examination would have passed your muster. That would have been just fine. It would have been better than eliciting damaging information. And again, I go back to the notion that if defense counsel had never said, I'm acting as a GAL, and if defense counsel had never introduced himself as GAL, if he had never acted in a way that was inconsistent with the role of defense counsel, we wouldn't be making this argument. The fact is that the record gives rise to... Are you suggesting the outcome would have been different had he chosen not to ask any questions? We don't know if the outcome would have been different. What do you think? We don't... Any best guess? The answer is I don't know because if Mr. Burgrave believed that it was in the best interest of the minor to be removed from his home, then the GAL had no interest in investigating Rodney's special education records... We have two different events occurring here. The first event is the trial, where can the state prove your client guilty? The court found the state did. Then the second part of this trial, which you keep melding, it seems to me they're entirely different, is now what? And at the now what stage, why is it inappropriate for defense counsel to put on behalf of a GAL? Why is counsel required to adopt whatever his client, the 10-year-old or 11-year-old, thinks is best as far as where he should go and what should happen to him? Why can't... And isn't it more impressive and helpful for the court to hear from counsel's thoughts about this? Under the old version of the Act, where everyone's focus was on rehabilitation, I would agree with you, Your Honor. But at this point with the 10-year-old, that rehabilitation was no issue for the trial court. Is that your position? No, that's not my position at all. What my position is, is Section 1013 of the Juvenile Court Act entitles delinquent minors to defense attorneys, and a defense attorney advocates for the client's position. Which means in this situation, after the juvenile was found to be delinquent, the question is now at a dispositional stage. Counsel had no business exercising any independent judgment at all, but must literally be a mouthpiece for his 10-year-old client. That's not it at all, Your Honor. Well, what is it? I'm having trouble understanding where his failings manifested here. A defense attorney has a duty to advise his client about the options, providing the upsides and the downsides of particular options. Ultimately, under the rules of professional responsibility and the traditional role of defense attorneys, the client controls the course of the representation. The client makes the big choices. The client decides whether to go to trial. Ms. Bullard, this is a 10-year-old child. Now, let me ask you a question. Let's assume that the child's mother is a coke addict and provides no supervision whatsoever for the child. But the child, as many children do, are bonded with their parents and wants to go home. And you're sitting here telling us that that's what the defense attorney has to advocate for, knowing full well that if that child goes home, the child could end up dead. If the child is incompetent to make those decisions, then the rules of professional responsibility impose a duty on the defense attorney. The child is incompetent? Yes. So we'd have to have some kind of, you mean like fitness? Yes. So before trial counsel can exercise his judgment, we're going to have to have a shrink, do a test, and decide whether this kid has the fitness of a standard 10-year-old boy, I guess? No, Your Honor. What do you mean by competency? The question to raise competency in terms of the rules of professional responsibility where the client is able to make decisions in the client's interest. The rules don't provide for in the client's best interest. They provide in the client's interest. Defense attorneys have clients all the time who make choices that are against their interests in the adult context. But those attorneys are still obligated to advocate for what the client wants. So you're saying there's no difference now between a 10-year-old in juvenile court who's being represented by counsel at a sentencing hearing versus a defense attorney who represents an adult. They have the same obligations. They have the same obligations to advise their clients. Because of this change in 1998, that's what you're saying? Yes. This guarantee of all of the rights of minors. Minors will not suffer under a system where they get defense attorneys. All it requires is now the state is going to have to do their job and they're going to have to do an investigation in terms of mom's coke addiction or the condition of the home. It's the trial court's job to make the determination about what's in the best interest of the child. It's not counsel's job to short-circuit that determination by counsel deciding what's in the minor's best interest. Counsel decided it? I thought counsel was called upon to make his recommendations to the court. And what counsel did is counsel said, I can't recommend sending this boy home to his mother. If he had acted as a defense attorney... By the way, you said apparently it's your view that the defendant has this right as opposed to his lawyer if he were an adult criminal. Is that right? What case stands for that proposition, counsel? Let's see, we have the rights. He has the right to decide whether he's going to plead guilty or not guilty, whether he's going to have a bench trial or jury trial, whether he's going to accept a lesser-included defense or not, whether he's going to testify or not, whether he's going to appeal or not. Did I miss one in there? What did it say about sentencing and counsel's independent views on that? I would make the analogy that occurs in adult cases sometimes where two years of probation is just asking for trouble. So the client would rather take a one-year term in DOC, earn his day-for-day credit and be out in six months rather than taking the two-year term of probation. Can the defense attorney make whatever recommendation at sentencing that the defense counsel believes appropriate even if in the subsequent PC it turns out to be contrary in some part to his client? I don't believe that trial counsel can override as fundamental a decision as what happens to me. Do you cite any case for that proposition? Do you know of any? I just listed the five things that the defendant controls, not his attorney, as opposed to how to cross-examine witnesses, which witnesses to call, which defense to present, whether to present an insanity defense or not. These are all counsel calls even if his client disagrees. Are they not? They are, Your Honor. But the one that comes to sentencing, the Supreme Court forgot to include that one? Those are trial tactics. Those are tactics that the attorney employs to get the ultimate result that the client wants. In the case of a trial, it's a not guilty verdict. In the case of a guilty plea, it's a favorable. Am I correct that your brief contains no citation to any case so wholly? No, Your Honor. I am correct or I'm not correct? You are correct. In fact, there is no citation to a case that says criminal defendants have the right, that defense attorneys have the right to override their client's choice about what disposition to have. Or a case that holds if a defendant wishes to trump whatever his counsel might want to say in sentencing. Is that the case? Would we be the first to so hold, counsel? You would be, but it's not an extraordinary holding. I think the fact that there is no case law out there that says the defendant gets to decide what disposition to ask for is because no attorney would try to override. If the client wants to go to DOC rather than take probation, there is no defense attorney who would try to do that. Because the rules of professional responsibility talk about the objectives of representation. At the trial stage, the objectives of representation deal with guilt or innocence. At the sentencing stage, they deal with what happens to me after I've been convicted. And again, I would reiterate, giving children the right to a defense attorney at trial, a real defense attorney at trial and at sentencing doesn't undermine the rehabilitative aims of the act in any way. So there are rehabilitative aims of the juvenile court. Absolutely. Which is different than... Absolutely. Before you said there was no difference. The aims of the act are rehabilitative. The role of defense counsel in deciding what's best for the minor's rehabilitation is different. So when the two attorneys zealously advocate a particular position, it's that zealous advocacy. It's subjecting all of the facts to this crucible of an adversarial system that allows the trial court to get a complete picture about what should happen to this child. Had the defense counsel, guardian of Lyda, after the finding of guilt, agreed with his client's idea of, I want to go home to Mama, would you be here? Because I guess he wouldn't have manifested any conflict at all, that would he? I would be because the arguments contained in the brief about per se conflicts, about a single attorney taking on the role of both defense counsel... But you reduced the per se because you wouldn't have any claims that there was any actual manifestation of a conflict. I did make an actual conflict argument in the brief based on the soft peddling of what happened at trial and then the act of advocacy about sentencing. The cross-examination that you deemed inadequate or... And your honor, if we weren't starting from the position that this attorney acted as a GAL, I will concede to you, if this attorney said I'm a defense attorney, he behaved like a zealous advocate through the whole thing, and on cross he elicited damaging information and he didn't do... So it's his title that offended you? It is not his title, it is the role that he plays and the differences between the roles of defense attorney and... Thank you, counsel, you're out of time. Mr. McNeil. May it please the court, counsel. In a juvenile proceeding, the ultimate goal of all the participants should be to advance the juvenile's best interests. I wanted to start, before I forget, by commenting on the Henry J.D. case from 2004. It did deal with Article II of the Act, but the propositions of the findings, the roles of a guardian ad litem and minors counsel are not inherently in conflict and both roles having essentially the same obligations to the minor and society, in that an attorney appointed by the court in a juvenile proceeding must not only protect the juvenile's legal rights, but he must also recognize and recommend a disposition in the juvenile's best interest, even when the juvenile himself doesn't recognize those interests. These propositions were cited from Henry K. and B., a case that did deal with the delinquency proceeding, albeit it was before the 1998 amendments, but Henry J.D. was not, and there was nothing that indicated that those propositions were limited to just Article II of the Act. Also, the Fifth District in Henry B.K., which I think is only a few years old, cited this court with J.D. and K. and B. for the specific holding that there was no per se conflict with the guardian ad litem and defense counsel in a juvenile delinquency proceeding. Also, rehabilitation, I would submit, is still the primary purpose of the Juvenile Court Act. I base this on the Rodney H. Supreme Court decision, which recognized both the amendments to Article V and the difference between criminal and juvenile proceedings. That court stated, Article V may represent a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law, but proceedings under the Act are still not criminal in nature. Delinquency proceedings are protective in nature, and the purpose of the Act is to correct and rehabilitate, not to punish. Indeed, no suggestion or chain of criminality attaches to any finding of delinquency by a juvenile court. As far as the actual conflict in this case, I was going to submit to say, you guys already touched upon it, the only time any conflict arose between the minor's wishes and what counsel determined to be his best interest was at sentencing, where the minor wanted to stay in his current housing situation with his mom, which I think probably 99% of 10-year-old kids would want to stay with their mom. But counsel correctly determined, based on the mother's own testimony at the sentencing hearing, that that wasn't in the minor's best interest. That was based on the mother saying at that point that the minor wasn't in school and wasn't getting the medical or psychological care needed for a special needs child. And when asked what she was doing to rectify that situation, the mother really didn't have a clear-cut plan. She said she hoped to move back to a county where he could get into school, but had no real solid plans. So this was a definite situation where the minor didn't recognize what would be in his own best interest, and counsel did. And I think to ask counsel to disregard the best interest of his client would go against the... Well, you heard Ms. Bullard's argument. What about the argument that had this been a criminal case, adults involved, and there was a difference between the defendant and his counsel on a recommendation, whether probation or DOC is an example. Well, I remember back when I was a trial judge, I had some disagreements as to whether counsel thought a year in the joint now would be better than more probation, which his client thought because counsel didn't think his client had much chance of successfully completing the probation and understood that probation violation would likely be more than a year in DOC in rather a short time. So you're saying that even in a criminal proceeding... Well, that's what I'm asking you. She's saying that counsel there nonetheless has to advocate for whatever his client would want, or whatever the situation, you know, close question, probation, DOC. I wouldn't disagree with you. So you think the client controls? That's what I was asking you. Is she correct? I would say I would submit that the counsel controls since you named off the five things that the defendant would control. I'm interested in the forcible felony argument. Could you address that? Yeah. Yes. Is it the state's position that all aggravated batteries are forcible felonies? All aggravated battery felonies that involve the use or threat of physical force... Involve what? Involve the use or threat of physical force or violence against any individual. Wasn't the statute changed at some point in time, Mr. McNeil? Originally it provided for all aggravated batteries to be included, and then they amended the statute and provided that only aggravated batteries with great bodily harm were forcible felonies. I... If that is the case, I miss that legislative history. I just submit that the list ends with any other felony which involves the use or threat of physical force or violence against any individual. The legislature... That would mean the legislature would intend even a felony that even threatens physical force or violence would result in a forcible felony, but any aggravated battery would have to be raised to the higher standard of including... resulting in great bodily harm or permanent disfigurement, when any other felony wouldn't even have to involve physical contact at all, just the threat of it. Well, there have been cases that have held any other felony means any other felony than those listed. So aggravated battery is a listed felony. And I noticed that your brief didn't cite either one of those cases, one of which is Angelique Gee and one is Schmidt, people versus Schmidt. Angelique Gee is a second district case that holds only aggravated batteries with great bodily harm qualify as a forcible felony. And Schmidt holds the same thing. Yeah, there are a few, I think a few divisions in the first district. Those are both 2009 cases. Okay. Have you looked at those? I think I cited a first district 2009 case that finds the other way. I think there's a case from the 1990s in the first district with a different panel that did hold the other way. People versus Rosenthal, first district 2009 case. Didn't require qualification of great bodily harm to include aggravated battery as a forcible felony. Could you say that again? It said it didn't require qualification of great bodily harm to include aggravated battery as a forcible felony. I just think that, again, you're right, you're correct that the districts are... I don't think Rosenthal really discusses that issue. I think there's maybe a small paragraph that, there's no analysis of that section in Rosenthal. As opposed to the analysis that's in Angelique Gee and in Schmidt. So I don't know how that was presented to the court or how it was argued. But it's certainly not a focal point of the case. If I remember the facts right though, the aggravated battery was with a firearm. I don't think that it resulted in great bodily harm or permanent disfigurement at all. Right. My impression from reading that case though was, it was an aggravated battery with a firearm. But my impression is that they didn't really argue that issue of whether it was a forcible felony or not within the meaning of the statute. The court just noted it was a forcible felony. But there's no real discussion of the issue. My guess is it wasn't briefed, but I didn't look at the briefs in that case. Yes, I would just submit that reading it like that, where aggravated battery would be the only felony that's held to this standard that great bodily harm or permanent disability would be illogical when only the threat of physical force is needed for any other felony. Of course, in this case he was charged with aggravated battery resulting from... Being on a roadway. Well, it was insulting and provoking. There was no bodily harm alleged. I think that both charging instruments included repeatedly punching Scott Lindley in the face. But the charge of aggravated battery was based on insulting and provoking conduct, wasn't it? I don't think it was based on any bodily harm. Okay. Well, is that a concession then? Since bodily harm was not alleged? Well, I think that... I think in the indictments that bodily harm was alleged. No, it wasn't alleged. It was provoking or insulting conduct, as Justice Polk has indicated. So does that matter? I would say no, because I think that would still include the threat of physical force as an aggravated battery felony. So that brings me back to the question I asked you originally. Is it the state's position that all aggravated batteries are forcible felonies? As long as they involve the use of the threat of physical force. I think to read the... Well, what aggravated battery doesn't? It's just insulting, provoking. Is that what you're suggesting is the distinction? I'm not sure I follow you. Well, I'm just saying that... I think that the list should be more inclusive than exclusive with the catch-all at the end. I think that catch-all was still in the statute when the legislature changed from all aggravated batteries being included to aggravated battery causing great bodily harm or permanent disability and disfigurement. Well, when was that changed? None of the cases... I think it's 1990, but I don't have it in front of me right now. So it was quite a while ago. So even if the late 90s cases that I cited would have been after that. I'm not arguing that there are some cases that decide, but even Jones, which came out of the third district, that decided that the opposite of Angelique and Schmidt said, we recognize there's an issue here about how the statute could be interpreted and we invite the legislature to clarify. Right. Which, of course, Schmidt also said. We're still waiting for clarification. I agree with that. So then the issue becomes, if it is ambiguous, don't you construe it against the state and in favor of a defendant? Unless it would lead to illogical results, which I think it would. Are there any other questions? I have a question. I'd like to hear an argument regarding Rule 6058 and the Trout Court's failure to properly admonish. I think the main point to that is the defendant or respondent wasn't prejudiced by any, even if the admonishments were improper here. The sentence was within statutory limits and wasn't excessive. And defendant, like People v. Henderson, the Supreme Court says that prejudice or denial of real justice as a result of inadequate admonishment is required for remand. But in Henderson, there wasn't a sentencing issue on appeal. Here, this minor is trying to raise a sentencing issue, which could be construed because of his not filing the motion to reconsider, waived or forfeited. Right. So why isn't he prejudiced? What? Because even assuming that it isn't forfeited, he isn't prejudiced because I'm saying the sentence isn't excessive and it was within statutory limits. Why isn't an 11-year probation term for a 10-year-old excessive? Based on, I think, the severity of the crimes. Sometimes he punched a school employee in the face repeatedly. This was the minor's first offense, correct? At 10, yes. First contact with the police, correct? Yes. The minor had some mental disabilities to some extent, correct? Sure. None of that makes any difference in this with regard to whether the term of probation for 11 years is excessive. I think that the conditions aren't unreasonable that he is under for probation. I don't think it was an abuse of discretion. Well, I assume you've read Mrs. Bullard's brief, and she sets forth in it all of the things that go along with this probation, all of the requirements up until this minor's 21. Your argument, then, all those things are appropriate? No abuse of discretion? Correct. Thank you. Thank you, Counsel. Rebuttal, please. I'd like to address first the State's position that the only conflict that we know of between the minor and Counsel was at sentencing when Counsel advocated against the minor's wishes for placement. Could you hurry? Because I want to hear your argument on the other two issues. Sure. I will make this very brief. What we know about Counsel is Counsel thought this little boy should be removed from his home and the only way you're going to get to sentencing and the removal of him from his home is if you get that initial adjudication. So if Counsel is acting as guardian ad litem and believes that Rodney should be removed from his home, the guardian ad litem side of his representation needs the adjudication. If they don't have an adjudication, Rodney can't be removed from the home in the way that Counsel thinks that he ought to be. I would also note, I really just very quickly want to dispute the notion that the Act is rehabilitative and that it is the interest in all of the players for the Act to be rehabilitative. Section 5101, which sets forth the purposes and policies of the amended 1998-1999 Act, lists three purposes. The first is to protect citizens from juvenile crime. I would like to hear arguments on Rule 605 in excessiveness. The case law as discussed in my brief. And the aggravated battery as well. Okay. The case law is fairly consistent that if you don't admonish the accused, whether it's an adult defendant or a minor, that he needs to file a motion to reconsider sentence to preserve issues. It is unfair to penalize him for that at the appellate stage. The remedy consistently has been to simply address the minor's sentencing arguments. If this Court would prefer to send it back for accurate admonitions, then I think the Court's going to have to probably, the trial court's probably going to have to work a little bit harder on to ensure that the minor understood the admonitions because the sentencing transcripts are very clear that the minor didn't understand what the trial court was saying about that. But if this Court wants to remand for admonitions and the opportunity to file a motion to reconsider sentence, we're happy with that as well. We just believe that the record as it stands... Did the trial court even reference the motion other than the right to appeal? No. No. He didn't get that far. He kept trying to admonish the minor and the minor didn't understand. And Mr. Burgrave intervened fairly quickly and said we're going to stipulate that he understands the admonitions. And then finally, I believe, Your Honors, was it the... Forcible felony. Forcible felony. The plain language of the Act is very straightforward when interpreted using standard rules of statutory construction. The statute lists a variety of offenses. There's the presumption that if a legislature lists a variety of offenses that it intends to exclude others. In 1990, as you observed, in Public Act 86291, the legislature did amend the statute and the only thing that they did in that public act was to insert that phrase that limits the aggravated batteries to great bodily harm or permanent disability and disfigurement. The legislature's intended, presumed, that when they make an amendment, they mean to amend the statute in a meaningful way. Under the state's interpretation of aggravated batteries that don't result in great bodily harm, under the state's interpretation, if this aggravated battery falls under the catch-all phrase, what it does is it renders that limiting phrase about only aggravated batteries that result in great bodily harm and permanent disability, it renders that language superfluous. You don't need that language in there to get to these aggravated batteries. There would have been no point for the legislature to include that particular phrase because all aggravated batteries, including aggravated batteries that cause great bodily harm or permanent disability or disfigurement, would have already been encompassed in that catch-all phrase that sat at the bottom of the statute. So since these great bodily harm agbats were already covered by the statute... What if you throw a glass of water on a police officer? If there's not great bodily harm or permanent disability or disfigurement, it is not a forcible felony in juveniles for imposing sentences of probation which are five years or longer. If we agree with your argument, then the maximum sentence could be five years of probation? The maximum sentence is five years of probation. But what we're requesting is a remand for... That would be one effect. That would be one effect to shorten up his term of probation to a minimum of that five years. Yes, Your Honor. And regarding the remand, you're suggesting a remand to admonish him further under 605 and then what? Your Honor, I don't believe that a remand is really necessary based on the arguments that are contained in our briefs about how excessive an 11-year term of probation is for conduct that is normally dealt with as a matter of school discipline. So we believe that the argument is sufficiently presented. If you don't believe that, then it can certainly be remanded for... Thank you, counsel. We're out of time. The case is submitted. The court is in recess.